UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

EDWIN RUA
        Plaintiff,

V.

OFFICE OF THE SHERIFF
GUY W. GLODIS (other Deputies)

MEDICAL DEPARTMENT STAFF
KATHY WISNIEWSKI (Medical Dep't. Director)
SUE ROGERS (MD)
GERALDINE SOMERS (Primary care physician)
THOMAS PATNAUDE (former primary care physician)
PAM JONES (Nurse)
UN-NAMED MEDICAL STAFF
UN-NAMED SECURITY STAFF
                        et, al,
                        Defendants.

FILED
IN CLERKS OFFICE

2010 DEC 10  P 2: 45
                CASE NO: 10cv40251
U.S. DISTRICT COURT
DISTRICT OF MA.        Civil Complaint

DOCKETED

42 U.S.C. §§ 1983, 1985, 1986.
CIVIL RIGHTS COMPLAINT

The Plaintiff, EDWIN RUA, files this initial complaint pursuant to 42 U.S.C. §§ 1983, 1985, 1986 for multiple Civil Rights Violations that initiated from an MOTOR Vehicle accident while being trasported by the Worcester Sheriff's depatment en route to court as a Pre-trial detainee, and as a result suffering perminent dibiliating injuries wich in the subsequent weeks, months and years following the (wagon) accident suffered further by inadequate, ↓

1

and deliberate Callouse indifference to his medical care and needs, and while trying to See redress for his informal and formal grievances was not only denied Due Process but punish and thereby Violating his Rights Under U.S. Constitutional Amendment or protection of the FIRST, FOURTH, FIFTH and EIGHTH AMENDMENTS that culminate to obliteration of the FOURTEENTH AMENDMENT for Violations of Equal Protection and application of redress, and punishing the plaintiff by illegal seizure on suicide wach hours after the Motor Vehicle accident being cruel and Unusual punishment in concert with his medical pain and suffering of wich Due Process was, and is presently being denied and Void by the sheriff's custom useage, and policy of allowing medical staff to deny proper and adequate medical Health care and treatment in the interest of budgets etc. and refusing grievances to medical issues by security staff assistance, and the punishment of persistant efforts to seek redress and Due Process while acting under the color of law Violating Civil Rights of wich are Clearly establish by the supreme Law of the Land

2

and denying exhaustion of remedies through
the administrative process, and more important-
refusing to right a wrong while being in the
capacity to do so by intervening or to reform
the obvious systematic issues in hand.

The Sheriff, Deputies, medical staff, and
security staff are all being sued both jointly
and seperately, in the official capacities
of wich were set aside while performing
their official duties... When making personal
un-official decisions in violation of state, and
Federal law and a Violation of Civil Rights
thereby being sued in their individual and personal
capacities as Violating law and Constitutional
Rights and privelages, is not permissable
officialy... HENCE... THE ACTION IS NOW
COMMENCED.

## TABLE OF PARTIES

PLAINTIFF
1) EDWI RUA
    5 PAUL X TIVNAN DRIVE
    WEST BOYLSTON MA. 01583

3

DEFENDANTS,

1) GUY W. GLODIS (sheriff)
   5 PAUL X. TIVNAN DRIVE
   WEST BOYLSTON MA. 01583

2) UN-NAMED DEPUTIES
   5 Paul X. TIVNAN DRIVE
   WEST BOYLSTON MA 01583

3) KATHY WISNIEWSKI (medical Dep't. director)
   5 PAUL X. TIVNAN DRIVE
   WEST BOYLSTON MA 01583

4) SUE ROGERS (medical Dep't. MD)
   5 PAUL X. TIVNAN DRIVE
   WEST BOYLSTON MA. 01583

5) GERALDINE SOMERS (present primary care physician)
   5 PAUL X. TIVNAN DRIVE
   WEST BOYLSTON MA 01583

6) THOMAS PATNAUDE (former primary care physician)
   5 PAUL X. TIVNAN DRIVE
   WEST BOYLSTON MA 01583

7) PAM JONES (medical Dep't. nurse)
   5 PAUL X. TIVNAN DRIVE
   West BOYLSTON MA 01583

4

8) UN-NAMED MEDICAL STAFF
    5 PAUL X. TIVNAN DRIVE
    WEST BOYLSTON MA.01583

9) UN-NAMED SECURITY STAFF
    5 PAUL X. TIVNAN DRIVE
    WEST BOYLSTON MA.01583

## JURISDICTIONAL STATEMENT

This Honorable court has jurisdiction over the subject matter, persons and entities, corporations, government insurers, contractors, subcontractors, employees or agents as well as the Plaintiff who all worked, lived, resided and and caused, and executed damages to plaintiff that occurred starting in July 25 2008 through present filing date and continuing to date under the color of Law. In or about the city of Worcester Massachusetts and the town of West Boylston at the worcester county jail and House of Correction.

## THE DEFENDANTS CAUSED AND INFLICTED INJURIES

The Plaintiff EDWIN RUA, asserts the harms and damages suffered preliminarily as the actual PhysicAL Perminent Injuries from the Worcester sheriff's Dep't paddy wagon accident, and

5

and continuing actual pain and suffering,
depression, anxiety, duress, stress, fear, mental
anguish, Civil Rights Violations, and not
limited to physical disability.

## COMPLAINT FORMAT ON REVEIW AND STANDARD

This complaint is filed and presented in
. format as articulated in Fed.R.Civ.P.8(a) and 10(B)
respectively of wich all defendants formats
are also required in subsequent fillings as
a matter of Law.

## PRELIMINARI IMMUNEITY STRIKE

These defendants both one and several
are severed from the Eleventh Amendment
Cloak of protection as they relinquished
professionalism for personal decisions and
Violative unpublish policies that Violate
Clearly establish law and now as persons
lay bare to the instant suit by virtue
of the forthcoming FACTS and
EXHIBITS.

"FACTS"

1) On March 18, 2008, The Plaintiff Edwin Rua was arrested the Vice squad Unit, from Worcester police Department.

2) On March 20, 2008, Plaintiff was admitted to the Worcester County Jail and House of Corrections awaiting trial.

3) On March 20, 2008, Plaintiff Went through a medical examination at Jail. No injuries, no medications, no Chronic medical conditions (See EXHIBIT A)

4) On March 26, 2008, At the Jail medical Dept. performed physical examination, and a check up for medical Conditions (assessment good Health) physical examination was Completed on 04-02-2008 (See. EXHIBIT B)

5) On July 25, 2008, Plaintiff was being transported to Court by the Worcester Sheriff's Dept. The operator of the wagon was involved in a negligent Motor Vehicle accident en route the plaintiff's court hearing, plaintiff was in the wagon hands and legs cuffed to weist. No Seatbealts in wagon, aside from another inmate.

6) Motor Vehicle accident occurred on route 495 South. The wagon driver just before accident was driving reckessly, well over the speed limit,

7

at the same time using a cell phone.

7) In the course of the wagon accident plaintiff was sent flying forward into the metal wall head first, landing hard on the wagon floor, proceeding with the other inmate smashing on top of plaintiff who then lost consciousness from the impact of the accident (neither inmate was seatbelt).

8) About 15 Minutes after the accident plaintiff awoke to find the other inmate on top of him crying, yelling etc. from pain. Plaintiff was in severe pain at the time, not well conscious.

9) Inside the garage of the Lawrence District court house, the plaintiff had to be taken out the wagon by the fire Dep't. in a strecher to an ambulance, to the emergency room at Lawrence General Hospital (see EXHIBIT C)

10) Still on July 25, 2008, a few hours after the accident plaintiff arrived back to the Worcester County jail where he spoke to medical Dep't. Staff, who then sended him to same unit where he was in the jail. Then shortly after being in same unit J Block plaintiff was brough back to speak to medical staff.

11) Plaintiff spoke to Medical staff who at that point were very indifferent and rude while he explained in detail about the wagon accident, and about his medical severe pain condition etc.

12) Medical staff told security staff to place plaintiff In Unit A 1 wich was suicide unit

8

at that time. Plaintiff continues persistently to complaint about severe head, back pain etc. But medical staff continued to elude his medical condition, saying that there was nothing wrong with plaintiff (sec. EXHIBIT D)

13) In unit A 1 the living conditions were horrible, no mattress, no previlege property or property at all, no legal mail, peas, toothbrush. the plaintiff was (completely seized) and light in cell was on 24 hours a day.

14) Same day of accident in Unit A 1 I was giving motrin and was told repetely that me the plaintiff was lying, that if complaining persisted plaintiff would remain in Unit A 1 for a long period of time. then un-named nurse shut trap door on plaintiff's face.

15) In the subsequent days that plaintiff was in unit A 1 he requested for medical slips, grievances, and informally complaint about pain and living conditions or to speak to a captain Instead un-named nurses continued to shut cell trap door on his face.

16) On or about August 1, 2008, Plaintiff was transfered from unit A 1, to Unit Maxi B wich was the whole (segragation unit) then transfered to general population Unit maxi C.

17) In Unit Maxi C. Plaintiff requested for grievances, but was told that Medical Dept. Couldn't be grieved.

9

18) From August 2, 2008, Plaintiff filed countless medical slips explaining his severe pain and suffering, and about medical condition to medical Dep't at the jail. The plaintiff could hardly get out of his cell due to injuries and medical condition. (see. EXHIBIT, E).

19) Plaintiff was prescribed 4 Naproson pills a day for the pain he was experiencing without relief.

20) On October 29, 2008, Plaintiff was taken to Saint Vincent Hospital in Worcester for an M.R.I. After M.R.I. Plaintiff was prescribed 4 Ultram pain pills a day. At this point plaintiff was indeed taking 10 pills a day (see. EXHIBIT. F).

21) On November 11, 2008, Plaintiff filed medical slip to request for M.R.I. results. Yet no answer from medical Dep't. Plaintiff continued to file medical slips about pain and medical condition, but he was being eluded by medical Dep't. (see. EXHIBIT. G).

22) On January 16, 2009, Plaintiff was taken to Saint Vincent Hospital in Worcester, there MD THOMAS F. Mullings stated that plaintiff suffered a few fractures to spinal areas, and referred physical therapy (see. EXHIBIT. H).

23) From January 26, 2009, Plaintiff continued to complaint about his deteriorating medical condition to the next months ahead. (see. EXHIBIT, I).

10

24) On February 3, 2009, Before going to Court the
plaintiff went to the imfirmary, he told medical
staff that he was in severe pain, and asked why
he wasnt giving his meds. He was told by the
Un-named nurse to stop lying about medical
condition, then plaintiff asked for a tylenol, nurse
continued yelling and refused same un-named nurse
Who Kept shutting cell trap door at Unit A.1. When
plaintiff returned from court was lock in (pending a
disciplinary hearing (see EXHIBIT. J).

25) On february 21, 2009, Nurse PAM JONES came to
plaintiffs cell gave him his meds. Plaintiff Swallowed
meds. then nurse told security staff to lock plaintiff
into disciplinary action, wich he was, and was found
guilty and received 17 days in lockdown. From then on
nurse PAM JONES started to crushed plaitiffs meds.,
wich he was unable to Consume due to the manner in
wich meds. were Crushed, leaving plastic residue from
little bag med container. (see. EXHIBIT. K).

26) On March 30, 2009, Plaintiff personally spoke to
. THOMAS PATNAUDE, primary care physician, about his
pain and suffering, and medical condition, but physician
THOMAS PATNAUDE from the worcester county jail
told plaintiff that he had a bad back, that there
was nothing they could do for him because plaintiff
was in jail. Plaintiff continued to complaint and request
for treatment and grievances, but was told he
couldn't grive medical Dep't.

11

27) On May 19, 2009, Plaintiff was taken to saint vincent Hospital. MD Alberto Cabantog referred spinal injections, and again physical therapy(see. EXHIBIT, L).

28) On June 04, 2009, Jail Medical Dep't. followed through with P/T that was first referred by M.D. A. Cabantog On January 16, 2009 (see. EXHIBIT, H) and (Fact 22) "Delay".

29) On or about July 10 2009, Plaintiff filled out a Authorization release form request for his medical records, filled out medical request as well. And spoke to mental health (see. EXHIBIT, N) "Yet No records".

30) On July 18, 2009, Plaintiff filed grievance about Medical Dep't. Inadequate medical treatment, delaying acces to Hospital treatment, and his deteriorating medical condition. etc. (see. EXHIBIT, N).

31) On August 01, 2009, Plaintiff was called to imfirmary there was nurse Pam Jones who stated yelling that plaintiff wouln't see another MD once again, and that Medical Dep't. weren't going to provide any more medications. Plaintiff then asked Lt Anderson for a grievance Lt refused.

32) Plaintiff filed grievance on August 3, 2009, about being taken off his meds, and medical Dep't. continuing disregard of Outside Hospital referrals, and his poor painful medical condition (see. EXHIBIT, O).

33) On August 13, 2009, Plaintiff wrote letter to jail Deputy about Nurse Pam Jones harassment, and deliberate indifference to his medical condition, and poor medical condition. (see. EXHIBIT, P).

34) On August 14, 2009, Plaintiff was taken to Saint V. Hospital, there MD referred once again Spinel injections ASAP, because plaintiff failed to show for prior appointment. (see. EXHIBIT, Q) and first referral (see. fact, 27).

35) On August 27, 2009, Plaintiff personally spoke to Asst. Superintendent Mr. Timothy Hall, about jails medical Dept. deliberate indifference and harassment to his serious medical conditions, and their disregard of orders and Hospital requirements. Mr T. Hall at one point told plaintiff that Spinel injections were already performed, wich was not true. He was mislead by jail Medical Dep't.

36) By August 28 2009, Plaintiffs pain medications were still being crushed when ever 2nd shift nurse Pam Jones worked, Plaintiff was in fact Unable to consume meds most of the time, because of the manner that the meds were being crushed in a little plastic bag, leaving plastic residue mixed with pain meds.

37) On September 06, 2009, Plaintiff was denied a request for a grievance by security staff like many times before, Plaintiff was told he couldn't grieve medical Dep't.

38) On September 22, 2009, Plaintiff had spinel injections done, and MD from outside Hospital referred plaintiff to Continue with pain meds. Yet jail medical Dep't. didn't follow with referral, not considering painful aftermath of this spinel injections at begining (see. EXHIBIT, R).

39) On september 23, 2009, Plaintiff was in excruciating pain from injections, and requested to medical staff for any Kind of pain reliever before going to court. He was denied, and was left to suffer.

40) On october 03, 2009, Plaintiff files grievance about the lack of diagnosis, and inadequate treatment, deliberate indifference, not being properly medication, and his lost of sense of feeling in left side of head etc. (see. EXHIBIT, S) Grievance denied as prior grievance.

41) On October 07, 2009, Plaintiff had court and was awoke by security staff telling him to hurry, plaintiff said he couldn't because of his medical condition, CO threaten him and stated that he didn't give a fxxx this security staff were from 3rd shift.

42) Plaintiff On October 08, 2009, wrote letter to Deputy MT. T. Hall about inadequate treatment, and misleading by Jail medical Dep't.(see. EXHIBIT, T).

43) On November 03, 2009, Plaintiff was taken to Saint V. Hospital, MD. A. Cabantog referred a 2nd MRI. and Stated to plaintiff, that you may need open surgerie for your injuries (see. EXHIBIT, U).

44) On November 19, 2009, Plaintiff was taken for MRI. at Saint V Hospital (see. EXHIBIT, V).

45) On November 20, 2009, Next day of MRI. Plaintiff was called to infirmary and spoke to primary care physician Geraldine Somers, who told him, it was nothing wrong with him, that MRI. results didn't show anything bad. Plaintiff replied why then he was in so much pain. G. Somers replied is probably some nerve problem wich is common in people.

46) On December 15, 2009, Plaintiff was called to infirmary from his persistent medical complaints, about chronic pain, But MD G Sommers cut plaintiff off and stated deal with it

14

referring to his medical painful condition, MD Geraldine somers also stated that they couldn't do anything about medical condition, because plaintiff was in jail. MD was very uppity.

44) On December 17, 2009, Plaintiff wrote letter to director of jail medical Dep't. Kathy Wisniewski about MD Somers and MRI results. plaintiff was confused he never saw his medical records (see. EXHIBIT W).

46) On December 18, 2009, Plaintiff wrote letter to Asst. Superintendent. Timothy Hall with he corresponded, and plaintiff did as well, because again he was lied to, by jail medical Dep't. (see EXHIBIT X).

47) On January 23, 2010, Plaintiff filed grievan about jail medical Dept. denial, and delaying accesss to outside Hospital treatment etc. (see. EXHIBIT Y). "Grievance denied."

50) Un-known date Plaintiff wrote to superintendent.

51) On February 04, 2010, Deputy replied to plaintiff by letter again Deputy was lied to by medical Dep't. at jail. Plaintiff replied with a clarification letter. (see. EXHIBIT Z).

52) On March 05, 2010, Plaintiff filed grievance about him not being treated for his head injurie, and about jail medical Dep't not following referral for pain meds. and the deterioration of his medical condition (see EXHIBIT AA).

53) On April 04, 2010, Plaintiff wrote to superintendent because he never received an answer from prior grievance from March 05, 2010 (see. EXHIBIT BB).

54) On April 08, 2010, Plaintiff was taken to Saint V. Hospital to see MD. Alberto Cabantog who told plaintiff that there was suppose to be an appointment set months from then

15

that plaintiff might still need surgetic, and that MD A. Cabaniog knew of people that had similar medical conditions that couldn't even get up out of bed, that he didn't want the plaintiff to die or have a stroke. MD A. Cabantog tried to reach MD G. Somers by telephone, but jail told him MD Somers didn't work at jail anymore. "MD Somers always remained primary care physician".

55) On May 13, 2013, Plaintiff was taken to see a Hematologist, MD or hematologist stated plaintiff didn't have sicklell cell disease. Yet NO blood test was performed.

56) On June 09, 2010, Plaintiff filed grievance about jail medical Dep't. Continuing to interfer with outside Hospital rehabilitation services(see. EXHIBIT, CC)'Denied".

57) On July 13, 2010, Plaintiff wrote to superintendent of jail about, being unmedicated, and about medical Dep't. in jail not following referrals by outside MD. Intervention of treatment (see. EXHIBIT, DD)->is EXHIBIT DD).

58) On July 20, 2010, A 258 claim was timely filed in behalf of the plaintiff. Certified mail, and hand delivered to Sheriff's office of Worcester County Jail, and to Attorney General, Martha Coakley(see. EXHIBIT, EE).

59) On July 27, 2010, Plaintiff was taken to saint V. Hospital to see A. Cabantog, he referred once again for pain medication, wich plaintiff hadn't been taking, Since MD A Cabantog last referred On September 22, 2009. In this cruel manner the jail medical Dep't. Subjected the plaintiff to undue pain and suffering with out pain meds for about 11 months.

16

60) On August 20, 2010, Plaintiff back to physical therpy at Saint V. Hospital, in severe pain, the plaintiff is not the same athletic person he was prior to Motor Vehicle accident.

61) On September 02, 2010, Plaintiff wrote letter to Kathy Wisniewski Director of Medical Dep't about nurse Pam Jones, placing meds into her bear hand, without gloves on, and unabling plaintiff to consume meds, and risking the Unit at Maxi.C. Who are all pre-trial detainees to the flue, diseases etc. (see EXHIBIT, FF).

62) On September 07, 2010, Plaintiff at physical therapy at Saint V. Hospital, in severe back and head chronic pain, disabling pain with plenty of other medical complications.

63) On September 15, 2010, Plaintiff filed grievance about nurse Pam Jones, continuing to grab medications without gloves purposly, unabling Plaintiff to consume his prescribed meds (see EXHIBIT, GG). Denied practicly because it was originally approved by coordinator but same malicious method continued, by nurse.

64) On September 16, 2010, Plaintiff PT at Saint V. Hospital in severe pain, depress, stress etc. from his deteriorating medical condition. Plaintiff cried in this PT section.

65) On October 11, 2010, Plaintiff wrote letter to superintendent about nurse Pam Jones callous indifference with handling detainees meds (see EXHIBIT, HH).

66) On October 19, 2010, Plaintiff filed grievance seeking monetary relief, and other relief from Jail (see EXHIBIT, II). "this grievance was as well denied."

17

67) On November 10, 2010, Plaintiff was taken
to Physical therapy at Saint Vincent Hospital.
Again prove of intervention by Jail Medical
Dep't. since Plaintiffs last P.T. section was
on September 16, 2010. About two month wait.

68) On November 18, 2010, Plaintiff filed grievance
about same issue with nurse PAM JONES who
continued to intervene with plaintiffs consume
of Medication (see EXHIBIT, JJ). "Grievance denied."

69) On November 19, 23 and 30, 2010, The plaintiff was
taken to P.T. at Saint Vincent Hospital and plaintiff
was in severe chronic pains head and upper, lower
and disk excruciating pain with out relief.

70) On November 30, 2010, Was, Plaintiffs assessment
day with P.T. Plaintiff was referred by Hospital
chiropractor Ms vicky, to See jail Doctor about further
treatment. Plaintiffs medical condition not improved.

71) December 2, 2010, Plaintiff present medical condition:
lost sense of feeling in leftside forehead, head aches, dizziness,
depression, anxiety, disabling pain, in conjunction with
discomfort, chronic back pain, tingling, stiffness,
irregular heart beat at times, difficulty sleeping,
sitting, bending etc...

18

# RELIEF BEING SOUGHT

Relief being sought through defendants from the government offices and persons or individual therein who were or are acting under the color of law, either directly or indirectly in whole or in part or from agencies, businesses, or private corporations that are as well acting under the color of law, either directly or indirectly in whole or in part is; Declatory judgement, injunctive relief, summary judgement, compensatory and punitive recovery and damages, for past and future pain and suffering, for emotional past and future pain and suffering, as well as for future physical impairement, for medical care and rehabilitation services sustained in the past and future, for loss capacity for enjoyment of life sustained in the past, and for loss of capacity for enjoyment of life that in reasonable probability will be sustain in the future, and damages with any other relief this Honorable Court deems just or appropriate.

# REQUEST AND DEMAND FOR TRIAL BY JURY

I the Plaintiff EDWIN RUA Claim, request and assert to exercise my Right under the FIFTH and SEVENTH Amendments of the Bill of Rights to the United States constitution Demand for a trial by jury.

## OATH

I HEREBY DECLARE, UNDER THE PENALTY AND PAINS OF PERJURY, THAT ALL FACTS, CLAIMS AND ALLEGATIONS 'SUPRA" ARE TRUE AND ATTACHED TO PARTIES IN GOOD FAITH.

DATED: 12/06/2010

Respectfully submitted,
EDWIN RUA
PRO-SE
5 PAUL X. TIVNAN DRIVE
WEST BOYISTON MA. 01583

19

CERTIFICATE OF FEDERAL, STATE SERVICE

I hereby certify a true copie of the foregoing
Notice of civil Rights and personal injury action,
and all other Exhibits, attachments and notices
have been served via certified mail U.S.
postal service to:

(a) UNITED STATES DISTRICT COURT
OFFICE OF THE CLERK
595 MAIN STREET, ROOM 502
WORCESTER, MA 01608

(b) Hon. MARTHA COAKLEY
OFFICE OF THE ATTORNEY GENERAL
ONE EXCHANGE PLACE
WORCESTER, MA 01608

DATED: 12/06/2010

Respectfully submitted,

EDWIN RUA
5 PAUL X. TIUNAN DRIVE
WEST BOYLSTON, MA. 01583
MSA#0092938

20

# CERTIFICATE OF SERVICE

Hereby with the complaint I send the followings:

1. A Civil Cover Sheet

2. A Civil Category Sheet

3. Summons for each defendant

4. An AO 240 application to proceed without fees or costs, with submitted affidavit, and Certified proof of my institutional equivalent for the prior six months.

Dated 12/06/2010

CC:
United States District Court

Respectfully submitted,

Edwin Rud
MSA#0092938
5 Paul X Tivnan Drive
West Boylston MA 01583